INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD ET AL. *v.* BOARD OF SCHOOL TRUSTEES OF THE DELPHI COMMUNITY SCHOOL CORPORATION

[No. 2-176A15. Filed October 18, 1977. Rehearing denied November 17, 1977. Transfer denied February 27, 1978.]

*John P. Price, Jonathan L. Birge, Grace M. Curry, Bingham Summers Welsh & Spilman,* of Indianapolis, *Theodore L. Sendak,* Attorney General, *Donald C. Trigg,* Deputy Attorney General, for appellant Board, *Nelson J. Becker, Hanna, Small, Sabatini & Becker,* of Logansport, for appellant Brothers.

*Philip A. Nicely, Bose McKinney & Evans,* of Indianapolis, *Joseph T. Ives, Jr., Ives & Ives,* of Delphi, *Frank Tolbert, Miller, Tolbert, Hirschauer & Wildman,* of Logansport, for appellee.

LOWDERMILK, J. — This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

## STATEMENT OF THE CASE

Respondents-appellants, Indiana Education Employment Relations Board (IEERB), and Robert Brothers (Brothers), perfect this appeal following the judgment of the trial court which reversed the decision of the IEERB which found that petitioner-appellee, Board of School Trustees of the Delphi Community School Corporation (Board), had committed an unfair labor practice in not renewing Brothers' contract because of his exercise of protected activities in connection with the Delphi Classroom Teachers

Association (DCTA).

## ISSUES

The central issues presented for our resolution are as follows:

1.  Whether the trial court erred in finding that Brothers' actions on behalf of a fellow teacher were not protected within the meaning of the Certificated Educational Employee Bargaining Act.[1]

2.  Whether the trial court in reviewing the decision of the IEERB applied an erroneous standard of review to the facts.

3.  Whether the trial court erred in finding that the IEERB was without power to order reinstatement with back pay of a teacher who has been wrongfully discharged.

## FACTS

Brothers was a non-tenured instrumental music instructor in the Delphi Community School Corporation for the school years 1971-72, 1972-73 and 1973-74. In May, 1973, Brothers was elected president of the DCTA which was the exclusive bargaining representative for the teachers in the Delphi Community School Corporation. He was also chief spokesman for the DCTA negotiating team until May 1, 1974.

In February, 1974, contract negotiations between the DCTA and the Delphi Community School Corporation were scheduled to commence for the 1974-75 school year. Fred W. Minnick, principal of the Delphi Middle School, was the chief spokesman for the Board's negotiating team.

Initial negotiations between the DCTA and the Delphi Community School Corporation were fruitless because of the inability or unwillingness of the School Corporation to furnish the materials to the DCTA necessary to make a meaningful proposal. Arthur O. Weddell, Superintendent of the Delphi Community School Corporation, promised to furnish Brothers the needed information within three or four days. This promise was made in early March, 1974. The information was furnished, with no

---

1.  IC 1971, 20-7.5-1-1 *et seq.* (Burns Code Ed.).

apparent explanation for the delay, at the end of March. During this period no bargaining had occurred between the DCTA and the School Corporation.

During the first week of April, 1974, Michael Fisher, the Delphi High School vocal instructor, requested the assistance of Brothers as DCTA president to help him retain his teaching position. Fisher had theretofore been asked to resign his position. Fisher would have obtained tenured status if his contract had been renewed for the 1974-75 school year. Fisher had been in continuous contact with Gerald F. Manahan, principal of Delphi High School, concerning his requested resignation.

On April 13, 1974, Brothers and Fisher visited Robert Montfort, the Indiana State Teachers Uniserv Director, to discuss how Fisher's job could be saved. It was determined there was no formal grievance procedure available to them. On the Saturday of April 20, 1974, following a choir contest, Brothers told Fisher's students that their teacher's job was in jeopardy and to tell their parents. Also, Brothers contacted the parents of some music students and requested they call Board members and ask them to carefully review Fisher's record before taking any action on his contract. Weddell apparently had informed Fisher not to fight the resignation request or he might not ever get another teaching job in the State.

On April 22, 1974, Brothers accompanied Fisher to see Manahan. Manahan was upset at Brothers' appearance on behalf of Fisher, and in Brothers' use of some parents and students to call Board members. At this meeting Manahan informed Brothers that he might be in more trouble than Fisher over the renewal of his contract.

The Board met in executive session on April 23, 1974. Prior to the Board's meeting, on April 19, 1974, Minnick for the first time during Brothers' tenure at Delphi evaluated him recommending the non-renewal of his contract. Minnick did not show his evaluation to Brothers and did not remember showing it to the Board. Superintendent Weddell did not recall if any of Brothers' and Fisher's evaluations were before the Board. Minnick and

Manahan did recall that they recommended against Brothers obtaining tenure, although Brothers would not have been eligible for tenured status until the following year. The Board voted 6-0 not to renew Brothers' contract.

## DISCUSSION AND DECISION

Issue One

Findings of facts Nos. 15 and 16 entered by the trial court provided as follows:

"15. Brothers, in engaging in the activities to aid Fisher, was not engaging in an activity that was protected under Public Law 217 for the following reasons:

(1) The action of Brothers in contacting parents and students is not a protected activity under Public Law 217 and is the complete antithesis of the purpose of Public Law 217.

(2) The renewal or non-renewal of a teacher's contract, whether or not such teacher would be put on tenure as a result of the renewal of the contract, is not a subject of discussion under Section 5 of Public Law 217.

(3) Discussion of an *individual* teacher or an *individual* student is not a right guaranteed under Section 5 of Public Law 217.

16. Respondent, Brothers, in his activities on behalf of Fisher, was not engaged in an activity which is protected under Public Law 217, and as such, did not have a right to file an unfair labor practice charge against the School Board, even if the activities of Brothers on behalf of Fisher were the reasons for the non-renewal of Brothers' contract." (Original emphasis).

We take these findings of fact made by the trial court as meaning that the decision of the IEERB was contrary to law. IC 1971, 4-22-1-18(1) (Burns Code Ed.).

Brothers and the IEERB contend that Brothers' activities in assisting Fisher, an individual teacher with an individual grievance, were protected activities within the meaning of the Certificated Educational Employee Bargaining Act (Act). Therefore, Brothers' discharge for engaging in this activity was an unfair labor practice.

The Board contends that the actions taken by Brothers on behalf of Fisher were not protected within the meaning of the Act and his discharge was therefore not unfair within the meaning of the Act.[2]

The statutes which are relevant to our disposition of this issue provide:

"(o) 'discuss' means the performance of the mutual obligation of the school corporation through its superintendent and the exclusive representative to meet at reasonable times to discuss, to provide meaningful input, to exchange points of view, with respect to items enumerated in section 5[20-7.5-1-5] of this chapter. This obligation shall not, however, require either party to enter into a contract, to agree to a proposal, or to require the making of a concession. A failure to reach an agreement on any matter of discussion shall not require the use of any part of the impasse procedure, as provided in section 13 [20-7.5-1-13]. Neither the obligation to bargain collectively nor to discuss any matter shall prevent any school employee from petitioning the school employer, the governing body, or the superintendent for a redress of his grievances either individually or through the exclusive representative, nor shall either such obligation prevent the school employer or the superintendent from conferring with any citizen, taxpayer, student, school employee or other person considering the operation of the schools and the school corporation." IC 1971, 20-7.5-1-2(o) (Burns Code Ed.).

"20-7.5-1-4 [28-4554]. Subjects of bargaining.— A school employer shall bargain collectively with the exclusive representative on the following: salary, wages, hours, and salary and wage related fringe benefits. A contract may also contain a grievance procedure culminating in final and binding arbitration of unresolved grievances, but such binding arbitration shall have no power to amend, add to, subtract from or supplement provisions of the contract. [IC 1971, 20-7.5-1-4, as added by Acts 1973, P.L. 217, § 1, p. 1080.]." IC 1971, 20-7.5-1-4 (Burns Code Ed.).

"20-7.5-1-5 [28-4555]. Subjects of discussion.— (a) A school employer shall discuss with the exclusive representative of

2. Whether the activity for which the school employee was discharged for performing can be classified "protected" within the meaning of the Act is crucial to the reviewing court's standard of review as will be discussed *infra.*

certificated employees, and may but shall not be required to bargain collectively, negotiate or enter into a written contract concerning or be subject to or enter into impasse procedures on the following matters: working conditions, other than those provided in section 4 [20-7.5-1-4]; curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations: Provided, however, That any items included in the 1972-1973 agreements between any employer school corporation and the employee organization shall continue to be bargainable.

(b) Nothing shall prevent a superintendent or his designee from making recommendations to the school employer. [IC 1971, 20-7.5-1-5, as added by Acts 1973, P.L. 217, § 1, p. 1080.]" IC 1971, 20-7.5-1-5 (Burns Code Ed.).

"20-7.5-1-6 [28-4556]. Rights of school employees and school employers. — (a) School employees shall have the right to form, join or assist employee organizations, to participate in collective bargaining with school employers through representatives of their own choosing and to engage in other activities, *individually or in concert* for the purpose of establishing, maintaining, or improving salaries, wages, hours, salary and wage related fringe benefits and other matters as defined in sections 4 and 5[20-7.5-1-4, 20-7.5-1-5].

(b) School employers shall have the responsibility and authority to manage and direct in behalf of the public the operations and activities of the school corporation to the full extent authorized by law. Such responsibility and activity shall include but not be limited to the right of the school employer to:

(1) direct the work of its employees;

(2) establish policy;

(3) hire, promote, demote, transfer, assign and retain employees;

(4) suspend or discharge its employees in accordance with applicable law;

(5) maintain the efficiency of school operations;

(6) relieve its employees from duties because of lack of work or other legitimate reason;

(7) take actions necessary to carry out the mission of the public schools as provided by law. [IC 1971, 20-7.5-1-6, as added by Acts 1973, P.L. 217, § 1, p. 1080.]" (Our emphasis) IC 1971, 20-7.5-1-6 (Burns Code Ed.).

"20-7.5-1-7 [28-4557]. Unfair practices. — (a) It shall be an unfair practice for a school employer to:

(1) interfere with, restrain or coerce school employees in the exercise of the rights guaranteed in section 6 [20-7.5-1-6] of this chapter.[;]

(2) dominate, interfere or assist in the formation or administration of any school employee organization or contribute financial or other support to it; Provided, That subject to rules and regulations made by the governing body, a school employer may permit school employees to confer with the school employer or with any school employee organization during working hours without loss of time or pay;

(3) encourage or discourage membership in any school employee organization through discrimination in regard to hiring or tenure of employment or any term or condition of employment;

(4) discharge or otherwise discriminate against a school employee because he has filed a complaint, affidavit, petition, or given any information or testimony under this chapter [20-7.5-1-1 — 20-7.5-1-14];

(5) refuse to bargain collectively or discuss with an exclusive representative as required by any provisions of this chapter;

(6) fail or refuse to comply with any provision of this chapter.

\* \* \*"

IC 1971, 20-7.5-1-7 (Burns Code Ed.).

It is the opinion of this court that the actions taken by Brothers on behalf of Fisher, as noble and as well meaning as they may have been, were not protected activities within the parameters of Sections 5 or 6 of the Act. Therefore, the decision of the IEERB was contrary to law as found by the trial court.

The record discloses that when Fisher called upon Brothers to represent him as president of the DCTA in his upcoming meeting

with Manahan, principal of Delphi High School, Brothers was not seeking to discuss the selection, assignment or promotion[3] of personnel as representaive of the DCTA for the benefit of all members thereof, rather, he was seeking to redress a grievance which pertained only to a single member of the DCTA.

Brothers and the IEERB attach great significance to Section 6 of the Act which allows school employees, *inter-alia*, to engage in activities, individually or in concert, to promote their rights found in Sections 4 and 5 of the Act. This language, according to the arguments advanced by Brothers and the IEERB, allows a single school employee and his representative to discuss with the school employer the school employee's individual grievance over the non-renewal of his contract.

We cannot accept this argument brought forth by Brothers and the IEERB for two primary reasons. First, Section 5 of the Act mandates the school employer to discuss the items enumerated therein with the exclusive representative of the school employees' bargaining unit. Section 5 of the Act clearly contemplates that the discussion of the factors enumerated therein are to be on behalf of all members of the school employees' bargaining unit. Second, to adopt the interpretation of Section 6 of the Act urged upon us by Brothers and the IEERB would place an almost intolerable burden upon school employers, one which we are of the opinion our legislature could not have intended. Brothers' and the IEERB's construction of Section 6 could require a school employer to discuss with every teacher his or her ideas concerning all those factors found in Sections 4 and 5 of the Act or risk being cited by the IEERB of having committed an unfair labor practice.

This court is of the opinion that the proper construction of the disputed language found in Section 6 of the Act, which allows school employees to engage in activities, individually or in concert, for the purpose of furthering their rights enumerated in

3. The parties devote lengthy sections of their briefs to a discussion of whether the words selection, assignment or promotion of personnel encompass the "renewal" of a non-tenured teacher's contract. Owing to our disposition of this appeal, we find it unnecessary to answer this question.

Sections 4 and 5 of the Act, allows school employees to engage in only those activities which attempt to advance the rights of the teachers in the bargaining unit as a group, and confers no right upon a school employee to discuss a personal grievance with his school employer.

We do not wish to be understood as holding that the Act provides no recourse for a teacher who has an individual grievance. Such is not the case. We have held so far only that Section 6 of the Act does not afford a teacher any right to discuss his individual grievances with his employer, rather, Sections 4, 5 and 6 of the Act all contemplate the performance of those activities which seek to benefit all members of the employee bargaining unit.

If a school employee wishes to discuss his individual grievances with his school employer or school superintendent an avenue is provided in subsection (o), Section 2 of the Act. There, it is provided that a school employee can petition his school employer, governing body or superintendent to seek redress for his individual grievances. Also, the school employee is authorized to use his exclusive bargaining representative to assist him in airing his grievances under subsection (o). However, subsection (o) lends no assistance to Brothers or the IEERB in this appeal. The record discloses, and the trial court found, that at no time did Fisher petition his school employer, governing body, or superintendent for any redress of personal grievances he may have had. It stands to reason, therefore, that the actions of Brothers on behalf of Fisher could not be considered *protected activities* for which the Board in dismissing Brothers for engaging therein would have committed an unfair practice within the contemplation of the Act.

We now hold that Section 6 of the Certificated Educational Employee Bargaining Act does not confer upon an individual teacher any right to seek through his bargaining representative redress for his individual grievances with his school employer. Section 6 of the Act contemplates individual activity, or activity. in concert, which attempts to further the best interests of all members of the

bargaining group — not individual grievances. However, to discharge an employee representative for assisting a school employee in furtherance of his rights under Section 2, subsection (o) of the Act would be an unfair practice for which a complaint could properly be filed before the IEERB. As noted above, however, the record would refute any contention made by Brothers that he was assisting Fisher in the proper exercise of his rights pursuant to subsection (o).

Therefore, unless the school employer engaged in other practices which could be characterized as unfair interference with a protected activity within the meaning of Section 7 of the Act, the decision of the IEERB was contrary to law.

Brothers contends that the IEERB properly concluded that he was unfairly discharged because of his insistence that the Board bargain collectively in good faith, and not solely because of his activities on behalf of Fisher. Therefore, the IEERB would have statutory authority to hear his unfair labor practice complaint, order his reinstatement, and its decision was not contrary to law.

The Order entered by the IEERB, dated February 28, 1975, provided in pertinent part as follows:

"* * *

1. The Board does not make a determination as to paragraphs 1, 2, 3 and 4 of the Hearing Examiner's proposed remedies for the reason that such remedies were based upon unfair practices not alleged in the complaintant's (sic) petition.

2. The Board does, however, affirm the 5th proposal of the Hearing Examiner *which found that Robert Brothers was engaged in a protected activity in his conduct on behalf of another teacher,* and therefore, the dismissal of Brothers on those grounds is an unfair practice.

* * *" (Our emphasis)

We are of the opinion that Brothers' contention is without merit. Contrary to Brothers' contention, the full IEERB specifically refused to make a decision as concerned the following proposed remedies of the single hearing examiner.

"REMEDY

The hearing examiner recommends that the I.E.E.R.B. enter an order against the Delphi Community School Corporation that it:

1. Cease and desist from its bargaining practice of not furnishing requested relevant information within a reasonable time and that it further cease and desist from refusing to bargain any item under Sec. 4 of P.L. 217 upon the condition all proposals on items to be bargained under Sec. 4 of P.L. 217 be presented to it.

2. Cease and desist from any practice of letting administrators make remarks to school employees to the effect that use of their rights through the DCTA could result in their being unable to find a teaching position in the future.

3. Cease and desist from refusing to discuss Michael Fisher's promotion to tenure teacher, and to affirmatively take such actions as are necessary to insure that it meet its obligation to meet at reasonable times to discuss, to provide meaningful input and to exchange points of view with the DCTA on the foregoing item.

4. Cease and desist from refusing to discuss, with Robert Brothers and the DCTA, Brothers' teaching methods, assignment to middle school, student discipline problems and class size of band classes, and to affirmatively take such actions that will insure that it meets its obligation to meet at reasonable times to discuss, to provide meaningful input and to exchange points of view with the DCTA on the foregoing items.

* * *"

Therefore, the decision of the full IEERB must be viewed as finding only that Brothers' actions on behalf of Fisher in the case at bar were protected rights within the meaning of Sections 4, 5 and 6 of the Act. We have heretofore determined they were not. We therefore are of the opinion that the trial court did not err in finding that the decision of the IEERB was contrary to law.

Issue Two

Brothers and the IEERB contend that the trial court erred in

applying an erroneous standard of review to the findings made by the single hearing examiner, and in weighing the evidence.

We agree. However, having determined above that the trial court was correct in finding that the actions taken by Brothers on behalf of Fisher were not protected rights within the meaning of the Act, and therefore the decision of the IEERB was contrary to law, we do not feel a reversal of the cause is merited. However, because of the likelihood of this issue arising in the future, we have elected to discuss it.

IC 1971, 20-7.5-1-11 (Burns Code Ed.) provides as follows:

"Prevention of unfair practices.—Unfair practices shall be remediable in the following manner:

(a) Any school employer or any school employee who believes he is aggrieved by an unfair practice may file a complaint under oath to such effect, setting out a summary of the facts involved and specifying the section of this chapter [20-7.5-1-1 — 20-7.5-1-14] alleged to have been violated.

(b) Thereafter, the board shall give notice to the person or organization against whom the complaint is directed and shall determine the matter raised in the complaint, and appeals may be taken in accordance with IC 1971, 4-22-1 [4-22-1-1 — 4-22-1-30]. Testimony may be taken and findings and conclusions may be made by a hearing examiner or agent of the board who may be a member thereof. The board, but not a hearing examiner or agent thereof, may enter such interlocutory orders after summary hearing as it deems necessary in carrying out the intent of this chapter. [IC 1971, 20-7.5-1-11, as added by Acts 1973, P.L. 217, §1, p. 1080.]"

The findings of fact entered by the trial court make clear that it was under the opinion that when a teacher files a complaint pursuant to IC 20-7.5-1-11, *supra*, alleging his or her discharge because of an unfair school employer practice under Section 7 of the Act, the IEERB was required to give deference to the reasons enunciated by the School Board for the non-renewal of the teacher's contract. In other words, the IEERB has no indepedent fact finding function, but is limited to reviewing the reasons enunciated by the School Board for the non-renewal of a teacher's contract. As stated by the trial court in its finding of fact No. 8:

"* * *

8.   Under long established Indiana law, a determination or action of a school board is presumed to be valid and in accordance with law. The determination of the School Board not to renew the teaching contract of Respondent, Brothers, is final and conclusive and may not be reversed by a court, unless no evidence exists to support the reasons given by the School Board for the non-renewal, or unless the reasons given were a sham and the School Board is found to have acted in bad faith, corruptly, fraudulently, or to have grossly abused its discretion. Since the IEERB has the responsibility initially under Public Law 217 for reviewing the action of the School Board in not renewing a teacher's contract, instead of this Court, the IEERB now must also give the School Board the benefit of this presumption and follow the same standard of review.

* * *"

We are of the opinion that where a school employee alleges that the non-renewal of his contract was caused by his participation in protected labor association activities within the meaning of IC 1971, 20-7.5-1-6 (Burns Code Ed.) and IC 1971, 20-7.5-1-7 (Burns Code Ed.), *supra*, an independent *de novo* proceeding commences. The IEERB is not a reviewing agency. On the contrary, it is the function of the IEERB to conduct a *de novo* proceeding to resolve the unfair labor practice complaint, and it is the trial court's function which is one of review within the meaning of the Administrative Adjudication Act.

The proper scope of judicial review to be employed by a trial court when called upon to review a decision of the IEERB arising from an unfair labor practice discharge complaint was well stated in the case of *Indiana Education Employment Relations Bd. v. The Board of School Trustees of the Worthington-Jefferson Consolidated School Corp.* (1976), 171 Ind. App. 269, 355 N.E.2d 269, wherein at pp. 271-272 it was stated:

"The IEERB brings this appeal contending that the circuit court did not apply the correct standard of review in considering the decision of the IEERB and that the court erred in determining that the decision of the IEERB was not supported by substantial evidence.

IC 1971, 20-7.5-1-11 provides that a school employer or school employee, both defined within the Certificated Education Employee Bargaining Act, IC 1971, 20-7.5-1-1 et seq. (Burns Code Ed.), may file an unfair practice complaint with the IEERB. The IEERB, after giving notice to the party against whom the complaint is directed, then determines whether an unfair practice has in fact been committed. The section further provides that the IEERB's decision may be appealed in accordance with the Administrative Adjudication Act. IC 1971, 4-22-1-1 et seq. (Burns Code Ed.). IC 1971, 4-22-1-18 (Burns Code Ed.) provides as follows:

'Judicial review — Procedure. — On such judicial review such court shall not try or determine said cause de novo, but the facts shall be considered and determined exclusively upon the record filed with said court pursuant to this act.

On such judicial review, if the agency has complied with the procedural requirements of this act, and its finding, decision or determination is supported by substantial, reliable and probative evidence, such agency's finding, decision or determination shall not be set aside or disturbed.

If such court finds such finding, decision or determination of such agency is:

1. Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

2. Contrary to constitutional right, power, privilege or immunity; or

3. In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

4. Without observance of procedure required by law; or

5. Unsupported by substantial evidence, the court may order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed.

Said court in affirming or setting aside the decision or determination of the agency shall enter its written finding of fact, which may be informal but which shall encompass the relevant facts shown by the record, and enter of record its written decision and order or judgment.'

* * *

As stated in the Administrative Adjudication Act, the review by the court of actions of an administrative agency is not a trial de novo, but is a review of the evidence appearing in the record made during the agency's proceedings which led to its determination. The proper scope of judicial review of an agency's decision has been consistently stated as follows:

'The board, not the court, determines the issues of fact. The court cannot weigh conflicting evidence which appears in the record of the board's hearing for the purpose of determining for whom it preponderates.'

'If there is any substantial evidence to support the finding of the board, the court may not disturb the board's decision.' *Walden v. Indiana State Personnel Board* (1968), 250 Ind. 93, 103, 235 N.E.2d 191, 197; *See also: Indiana Alcoholic Beverage Commission v. Johnson* (1973), 158 Ind. App. 467, 303 N.E.2d 64; *Pendleton Banking Co. v. Dept. of Financial Institutions* (1971), 257 Ind. 363, 274 N.E.2d 705; *Indiana Alcoholic Beverage Commission v. Lamb* (1971), 256 Ind. 65, 267 N.E.2d 161; *Uhlir v. Ritz* (1970), 255 Ind. 342, 264 N.E.2d 312; *Board of Pharmacy v. Horner* (1961), 241 Ind. 326, 172 N.E.2d 62; *Board of Medical Registration & Examination v. Armington* (1962), 242 Ind. 436, 178 N.E.2d 741.

The decisions leave no doubt that the reviewing court is forbidden to reweigh the evidence presented to the administrative agency.

'The record shows that the trial court reached its own conclusions as to the merits determined from the evidence presented and made its own special findings of fact, contrary to the decision of the administrative body. This [sic] the trial court has no right to do unless the evidence and finding of the administrative body is undisputed and uncontradicated and only one decision can follow. The trial court, in reviewing the administrative action, has no right to weigh conflicting evidence and choose that which it sees fit to rely upon. The statute gives this fact finding function to the administrative body.' *Dept. of Financial Institutions v. State Bank of Lizton* (1969), 253 Ind. 172, 177, 252 N.E.2d 248, 251." (Original emphasis)

We are therefore of the opinion that the trial court did err in finding that unfair labor discharge cases originating under IC 20-7.5-1-11 were not *de novo* proceedings with the trial court's

reviewing power governed and limited by the provisions of the Administrative Adjudication Act.

Issue Three

Having heretofore determined that the trial court was correct in finding that Brothers' actions on behalf of Fisher were not *protected* within the meaning of Section 6 of the Act, and the decision of the IEERB was therefore contrary to law, we need not decide at this time whether the IEERB has the authority to order the reinstatement of a discharged school employee.

Judgment affirmed.

Robertson, C.J. and Lybrook, J. concur.

NOTE—Reported at 368 N.E.2d 1163.