### EVANSVILLE–VANDERBURGH SCHOOL CORPORATION, Appellant,

v.

### Mike ROBERTS and the Indiana Education Employment Relations Board, Appellees.

No. 1–179A13.

Court of Appeals of Indiana, First District.

July 26, 1979.

Opinion Vacated Oct. 1, 1979. See 395 N.E.2d 291.

Rehearing Denied Nov. 7, 1979.

**812**

Ronald R. Allen, Joe S. Hatfield, Jon D. Goldman, Evansville, for appellant.

Jack N. VanStone, Evansville, for appellees.

1. It is undisputed that the EVSC, Board of School Trustees is a school employer within the meaning of section 2(c); that Roberts is a school employee within section 2(e); that the

ROBERTSON, Judge.

Appellant Evansville-Vanderburgh School Corporation (EVSC) appeals from a judgment in favor of Mike Roberts (Roberts) and the Indiana Education Employment Relations Board (IEERB).

This cause was initiated by Roberts on behalf of the Evansville Teachers Association (ETA) by the filing of an unfair practices complaint with the IEERB.[1] The action was precipitated by the implementation of a teacher evaluation plan without, the ETA alleged, any discussion with the ETA. EVSC was also charged with an unfair practice on the grounds that the plan was promulgated by a committee of school teachers (none of whom were members of the ETA) chosen by the Administration without consultation with the ETA.

At the outset, we deem it appropriate to enunciate the proper standard of review, this being an appeal from an administrative agency that is within the purview of the Administrative Adjudication Act. See Ind.Code 20–7.5–1–11. It is the function of the IEERB to conduct a de novo proceeding to ascertain whether an unfair practice has been committed (see Indiana Education Employment Relations Board v. Board of School Trustees of Delphi Community School Corporation, (1977) Ind.App., 368 N.E.2d 1163), and on appeal to the trial court, such court acts in a reviewing capacity.

The board or agency, not the court determines the issues of fact. The court cannot weigh conflicting evidence, which appears in the record of the hearing, for the purpose of determining for whom it preponderates. If there is any substantial evidence to support the finding of the board or agency, the court may not disturb the board's or agency's decision. Indiana Ed. Emp. Rel. Bd. v. Board of School, etc., (1976) Ind.App., 355 N.E.2d 269.

ETA is a school employee organization and exclusive representative as defined in sections 2(k) and (l).

*Indiana Education Employment Relations Board v. Board of School Trustees of Baugo Community Schools,* (1978) Ind.App., 377 N.E.2d 414, 416.

We first deal with the correctness of the conclusion of the Hearing Officer, the IEERB, and the trial court that EVSC violated IC 20–7.5–1–7(a)(5) for the failure to discuss the teacher evaluation plan with the ETA prior to implementation. This statute declares that an employer commits an unfair practice for the refusal to discuss matters encompassed by IC 20–7.5–1–5, which provides:

> A school employer shall discuss with the exclusive representative of certificated employees, and may but shall not be required to bargain collectively, negotiate or enter into a written contract concerning or be subject to or enter into impasse procedures on the following matters: working conditions, other than those provided in Section 4; curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations . . . .

This obligation to discuss is more fully defined in IC 20–7.5–1–2(*o* ):

> "discuss" means the performance of the mutual obligation of the school corporation through its superintendent and the exclusive representative to meet at reasonable times to discuss, to provide meaningful input, to exchange points of views, with respect to items enumerated in Section 5 [immediately above] of this chapter. This obligation shall not, however, require either party to enter into a contract, to agree to a proposal, or to require the making of a concession. A failure to reach an agreement on any matter of discussion shall not require the use of any part of the impasse procedure . . . .

Collectively, these statutes provide that an employer commits an unfair practice under these sections if he refuses to meet at reasonable times with the exclusive bargaining representative and "provide meaningful input, [and] exchange points of view," with respect to working conditions, curriculum development, teaching methods, *et cetera.* Therefore, at least two issues are of critical import: (1) is the matter embraced within the "discussable" items of IC 20–7.5–1–5, and (2) did the parties discharge their obligations pursuant to IC 20–7.5–1–2(*o* )?

▮ With respect to the former, both parties have concentrated their efforts on whether the teacher evaluation plan was within the meaning of "working conditions." In construing a statute, we are ever-mindful that the words used are to be given their usual and ordinary meaning, and "we should not so construe a statute as to willfully and unnecessarily narrow or emasculate its provisions." *White v. White,* (1975) Ind.App., 338 N.E.2d 749, 754 (citation omitted). We believe the teacher evaluation plan in issue is indeed within the plain and ordinary meaning of "working conditions." The "philosophy" of the plan is to maintain high teacher competence by means of self evaluation forms, classroom observation by "evaluators," and an evaluation conference. The entire process may result in a recommendation for a change of assignment or dismissal, and appeal procedures are provided for. The guidelines for evaluators include "Instructional Skills," such as adapting teaching methods to individual abilities of pupils, and using "approved methods of correspondence, notes, [and] home visitation . . . ." Teacher guidelines also include consideration of whether he or she eliminates outmoded teaching styles; eliminates busy work; trains students in the proper care and use of school supplies and equipment; prepares a written lesson plan in the case a substitute teacher is required; gives classroom discipline appropriate to the "offense;" communicates and cooperates with parents; "display[s] emotional stability;" exercises "care and good taste in personal appearance;" "belong[s] to and participate[s] in professional organizations;" supports extracurricular and parent-supported activities, *et cetera.* We believe these factors significantly touch and concern the everyday activities of school teachers and, therefore,

are within the ordinary understanding of "working conditions."[2]

■ EVSC nevertheless complains that since the statute does not establish a "time frame" for discussions, it discharged its obligation by its willingness to discuss the issue *after* the plan was implemented. We agree with the IEERB below that "meaningful input" requires a willingness to discuss *prior* to implementation of the plan.[3]

■ EVSC next contends that the ETA waived its rights to a discussion for the failure to request an opportunity to meet prior to the implementation of the plan. This contention, even if we were to accept that a waiver could apply, is without merit. The trial court, in its special findings of fact below, stated:

11. There is substantial evidence in the record to support the hearing examiner's two additional findings of fact, which are as follows:

a. Robert Kraft was Vice-President of the ETA at the time of his appointment to chair the Evaluation Committee. He resigned as Vice-President of the ETA in February, 1975, months before the Committee completed work on the evaluation instrument and guide. His resignation precipitated a breakdown in communication between the ETA leadership and the Evaluation Committee.

b. Randall Harris, former President of the ETA, and Norma Kacen, Executive Director of the ETA, were not aware that the Evaluation Committee had finished its project and had produced a new evaluation instrument and guide until they received the agenda for August 28, 1975, School Board Meeting . . . . Al-

though the ETA received the agenda from one to three days prior to the School Board Meeting, it was not unreasonable for the ETA to wait until the school board meeting to request discussion   *   *   *

As these findings are supported by the record, we fail to see how the ETA could waive discussion of a matter upon which they were unaware.

■ EVSC next argues that the trial court erred in failing to find, as did the hearing officer, that the Superintendent did not act in bad faith in failing to discuss the plan, but rather was merely under a misapprehension of what constituted "discussable" topics. We must admit confusion in EVSC's presentation of this issue. The lack of cogent argument results in a waiver under Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). In an attempt to accommodate EVSC, however, we believe its contention is that the failure to discuss topics embraced within section 5 cannot, standing alone, constitute an unfair practice. We decline to adopt the proposition that all unfair practices must be based on a finding of bad faith. We believe the legislature's intent is clear that all concerned parties have an obligation to collectively bargain in good faith (section 4), and to promote meaningful input and the free interplay of ideas with respect to discussable topics. As such, the *process* of discussion and bargaining are governed only by the somewhat elastic standard of good faith.[4] Here, however, the *process* of discussion is not in issue; rather, we are faced with a *total failure* to discuss a discussable topic. In such a case, we believe the good or bad faith of the parties is irrelevant as to whether an unfair practice has occurred.[5] It seems clear that the fundamental objective of the Act is to bring the parties together; thereafter, su-

---

2.  As we believe the plan comes within the plain and ordinary meaning of "working conditions," we decline the invitation of EVSC to employ various devices for the construction of ambiguous statutes.

3.  The IEERB said that a prior discussion requirement was consistent with its previous decisions.

4.  For an exhaustive discussion and symposium, see Doering, *Bargaining and Discussion—Is it a Happy Marriage?* 50 Ind.L.J. 284 (1975).

5.  We assume that good or bad faith could be relevant with respect to the appropriate sanctions to be imposed. In this case, the IEERB issued a cease and desist order.

pervision by the IEERB is drastically limited to whether the process was infected with bad faith conduct. We believe, therefore, that the rudimentary purpose of the Act is to bring the parties to the discussion or bargaining table and the obligation to comply therewith is not dependent upon a showing of bad faith.

The more sensitive issue raised by EVSC concerns the trial court's affirmance of the Hearing Officer's conclusion of law[6] that EVSC had violated section 7(a)(1)[7] which states that it is an unfair practice for an employer to "interfere with, restrain or coerce school employees in the exercise of rights guaranteed in section 6 of this chapter." This violation is allegedly based on the grounds that the evaluation committee was selected without consultation with the ETA and contained no ETA members. The trial court found that the parties admitted the following relevant facts:

  a.  That the School Board through its administrative staff sets up many committees which include school employees, some * of whom are members of ETA, for the purpose of working on many items including discussable items provided in Section 5(a) of the Act without seeking prior appointment approval of such school employees from the exclusive representative. Such appointed school employees serve individually on such committees and do not represent in a representative capacity the Petitioner [ETA]. This stipulation applies to the Evaluation Committee in dispute.

  b.  The establishment of school committees which include school employees is not intended to take the place of the E–VSC discussion obligations under Section 5(a) of the Act.

Initially, we agree with the Hearing Officer that these committees constitute an "employee organization" within the definition of section 2(k):

> "school employee organization" means any organization which has school employees as members and one of whose primary purposes is representing school employees in dealing with their school employer, and includes any person or persons authorized to act on behalf of such organizations.

We are also of the opinion that a school employee organization is not necessarily synonymous with an "exclusive representative," which is defined in section 2(*l*);

> "exclusive representative" means the school employee organization which has been certified for the purposes of this chapter by the board or recognized by a school employer as the exclusive representative of the employees in an appropriate unit as provided in Section 10 of this chapter, or the person or persons duly authorized to act on behalf of such representative.

Therefore, a school employee organization by the terms of the statute may co-exist with an exclusive representative and their interrelationship, we believe, depends on the interpretation of the crux of employee rights embodied in IC 20–7.5–1–6(a):

> School employees shall have the right to form, join or assist employee organizations, to participate in collective bargaining with school employers through representatives of their own choosing and to engage in other activities, individually or in concert for the purpose of establishing, maintaining, or improving salaries, wages, hours, salary and wage related

---

**6.** The IEERB disagreed with the Hearing Officer on this issue alone.

**7.** EVSC has submitted an affidavit to the effect that at the hearing on the motion to correct errors, the trial court stated he based his decision on this issue on the grounds of section 7(a)(5). The affidavit additionally states, however, that the trial court was merely affirming the Hearing Officer's conclusion (which was based on section 7(a)(1)). Inasmuch as the

trial court's judgment affirmed the Hearing Officer's finding of a violation under section 7(a)(1), we perceive that EVSC has failed to present a colorable issue nor resulting prejudice.

* EVSC's brief substitutes the word "most" for "some" which is in the transcript. Such substitution is strongly disapproved by this court.

fringe benefits and other matters as defined in sections 4 and 5.

Insofar as relevant herein, this section bestows upon employees the right to join or assist employee organizations, or to act individually or in concert for the purpose of establishing or maintaining those matters which are discussable in section 5. As heretofore discussed, the teacher evaluation plan was a discussable item which was drafted and prepared by an employee organization established by the administration independently of any ETA participation or approval. Did this conduct interfere with or restrain employees in their right to join or assist employee organizations or to act individually or in concert in the establishment of a discussable item? We believe this question must be answered in the affirmative.

Clearly, by excluding ETA participation in the selection of the employee organization, the EVSC frustrated the basic rights protected in section 6, to-wit: the right to join or assist employee organizations and act individually or in concert for the benefit of the bargaining unit. *See Trustees of Delphi, supra.* It is not enough to say that the ETA would have its chance under section 5 to discuss the formulated plan, nor that the employee committees are not intended as a substitute for discussion under section 5. To accept such a proposition would be to say that the *obligations* embodied in section 5 operate independently of the *rights* created in section 6.[8] We think the proper interpretation is that the employer's obligations under section 5 are in *addition* to the employer's duty not to interfere with or restrain employees in the exercise of their section 6 rights, *i. e.,* employer compliance with section 5 does not mean that the employer may nonetheless interfere with or restrain the employee's section 6 rights. Here, the employee committee was the instrumentality in the drafting and proposal of a discussable matter and, as no ETA participation was involved,

ETA members were effectively denied their rights to participate under section 6. In sum, a school employer does not commit an unfair practice *per se* by merely creating an employee organization; however, when such a committee performs a critical function in the establishment of a policy concerning discussable matters, the employer violates section 7(a)(1) when school employees are effectively denied the opportunity to exercise the rights guaranteed in section 6(a). Parenthetically, we also note that committee communication with the ETA would enhance the ability of the ETA to provide "meaningful input."

Lastly, EVSC suggests that an affirmance by this court would be a non-recognition of an employer's rights. Specifically, EVSC directs us to the right to "confer" with school employees without discussion with the ETA (See section 2(*o*), and the right to establish policy, *et cetera,* under section 6(b). We must remind the EVSC that we are confronted with the interpretation of several sections in a statute and, as such, are duty bound to give effect to each section. *See Matter of Big Raccoon Conservancy District,* (1977) Ind.App., 363 N.E.2d 1004; *Indiana Alcoholic Beverage Commission v. State ex rel. Harmon,* (1976) Ind.App., 355 N.E.2d 450; *Thompson v. Thompson,* 259 Ind. 266, 286 N.E.2d 657. As we have held, discussable topics trigger affirmative rights upon school employees and duties upon school employers. In order for such affirmative rights and duties to be given effect, the employer's rights unilaterally to confer and establish policy can only refer to matters that are not discussable or bargainable. To hold otherwise would be to declare that what the legislature has given by one hand is swept away by the other.

Finding no reversible error, the trial court is in all respects affirmed.

Affirmed.

LOWDERMILK, P. J., and LYBROOK, J., concur.

---

**8.** Additionally, to accept EVSC's contention would create a redundancy in the statute—the failure to discuss under section 5 is prohibited in section 7(a)(5), while interference with section 6 rights is prohibited by 7(a)(1).