**INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD: Victor P. Hoehne, as Chairman of the Indiana Education Employment Relations Board; Thomas C. Brown, Executor of the Estate of Helen Brown, Deceased, and Deborah Duff, Appellants (Defendants Below),**

v.

**CARROLL CONSOLIDATED SCHOOL CORPORATION, BOARD OF SCHOOL TRUSTEES, Appellee (Plaintiff Below).**

No. 2–581A166.

Court of Appeals of Indiana, Second District.

Sept. 27, 1982.

Rehearing Denied Oct. 26, 1982.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellant Indiana Educ. Employment Relations Bd.

Jonathan L. Birge, Gregory D. Sumner, Bingham, Summers, Welsh & Spilman, Indianapolis, Edward Chosnek, Pearlman & Chosnek, Lafayette, for appellants Helen Brown and Deborah Duff.

Philip A. Nicely, Bose, McKinney & Evans, Indianapolis, John K. McBride, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellee.

March 10, 1982.

*right to appeal will be forfeited."* (Emphasis supplied.) Here, the last day to file it was

David J. Emmert, Melinda L. Selbee, Indianapolis, for amicus curiae Indiana School Bd. Ass'n.

SULLIVAN, Judge.

This is an appeal from the trial court's judgment setting aside the finding of the Appellant, Indiana Education Employment Relations Board (IEERB), that Helen Brown, now deceased, was the subject of an unfair labor practice because the Appellee, the Board of School Trustees of the Carroll Consolidated School Corporation (the School Board) failed to discuss the non-renewal of Brown's individual teaching contract with her exclusive representative, the Carroll Education Association, through its President, Appellant, Deborah Duff. The trial court also refused to enforce the IEERB's recommendation that Brown be reinstated.

We affirm.

In view of our determination, that the trial court correctly interpreted the law in holding that the School Board had no duty to discuss the non-renewal of an individual teacher's contract, we need not reach any of the other issues presented.

In March, 1978, the Carroll Education Association requested discussion with the School Board of the non-renewal of the contract of any teacher. The School Board replied that, even though it felt it was not obligated under current case law to discuss the non-renewal of an individual teacher's contract, it would discuss any non-renewal provided the affected teacher executed a "waiver of stigma," a document which purportedly waived any disability or damage to reputation which might arise as a result of the disclosure to the exclusive representative of the reasons for the non-renewal.

On March 29, 1978, the School Board informed Helen Brown, a non-permanent teacher in the Carroll Consolidated School Corporation, that there was a question whether her contract would be renewed. Thereafter, Brown and Duff by letter requested discussion of Brown's situation "on behalf of all members of the bargaining unit as a group and Helen Brown individually." In the letter, Brown refused to execute the waiver of stigma.

Prior to May 1, 1978, the School Board voted not to renew Brown's teaching contract. No discussion had occurred regarding her non-renewal.

Brown filed an unfair practice complaint with the IEERB alleging that the School Board had committed an unfair practice in refusing to discuss Brown's non-renewal unless she executed a waiver of stigma. The IEERB hearing examiner determined that the School Board had committed an unfair practice by failing to discuss the individual teacher's non-renewal, relying on IEERB precedent. Thereafter, a hearing was held on the sole issue of a proper remedy. In his opinion, the hearing examiner found that Brown was a competent and satisfactory teacher. He recommended that the full IEERB issue an order requiring the School Board to reinstate Brown. The full IEERB adopted the hearing examiner's opinion, except that it simply recommended that Brown be reinstated.

The School Board sought review of the IEERB decision. Following oral argument and briefing, the trial court entered its findings of facts, conclusions of law, and judgment in favor of the School Board.

Conclusions of law Nos. 7 and 8 entered by the trial court are as follows:

"7. The Board was not obligated or required by Section 5 to 'discuss' with the Association the non-renewal of Brown, a non-tenure teacher, prior to taking action to not renew the contract of Brown. 8. The Board could not, therefore, have committed an unfair practice by refusing to discuss the same with Brown or the Association."

The Appellants contend that the non-renewal of an individual teacher's contract is a discussable topic under Section 5 of the Certificated Educational Employee Bargaining Act, Ind. Code §§ 20–7.5–1–1 to –14 (1976 ed.). Section 5(a) of that Act provides in part:

"A school employer shall discuss with the exclusive representative of certificated employees ... the following matters:

working conditions, other than those provided in Section 4; curriculum development and revision; textbook selection; teaching methods; *selection, assignment or promotion of personnel;* student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations...." I.C. 20–7.5–1–5(a) (emphasis added) (hereinafter referred to as "Section 5").

The Appellants further contend that *IEERB v. Board of School Trustees of Delphi Community School Corp.* (1st Dist. 1977) 174 Ind.App. 481, 368 N.E.2d 1163, *transfer denied,* is not dispositive of this case but should be limited to the particular facts in that case.

In *Delphi,* the president of the exclusive representative, (Brothers) attempted to aid an individual teacher in retaining his teaching position by informing parents and students of the impending dismissal. Brothers also accompanied the teacher to a meeting with the principal of the school to discuss the proposed dismissal. The Delphi School Corporation thereafter voted not to renew Brothers' teaching contract.

The Court of Appeals, in holding that Brothers was not involved in protected activity in attempting to aid the individual teacher in keeping his job, found that Section 5 did not include an obligation to discuss a grievance which pertained only to a single member of the bargaining unit. The court observed: "Section 5 of the Act clearly contemplates that the discussion of the factors enumerated therein are to be on behalf of all members of the school employees' bargaining unit." 368 N.E.2d at 1168. We agree. We note, however, that the instant case does not involve an allegation that any bargaining unit member was involved in protected activity in attempting to aid a fellow employee in furtherance of a

grievance procedure. Rather, the sole issue is the scope of the discussion mandate of Section 5.

Discussion under Section 5 contemplates the mutual exchange of points of view regarding general conditions or overall guidelines applicable to, insofar as here pertinent, the "selection, assignment or promotion of personnel."[1] I.C. 20–7.5–1–5. Although discussion of individual cases *as examples* may aid in examining policy, there should be no obligation to discuss these individual cases before action is taken or to take an individual grievance to the discussion table. There is ample provision in the law for the establishment of a grievance procedure. *See* I.C. 20–7.5–1–2(*o*), –4 (1976 ed.). *See also Board of School Trustees of Bango Community School v. IEERB* (3d Dist. 1980) Ind.App., 412 N.E.2d 807; Rund, *Commentary: Symposium on Teacher Bargaining,* 50 Ind. L.J. 344, 356 (1975).

I.C. 20–7.5–1–6(b)(4) (1976 ed.) gives school employers the right and responsibility to "suspend or discharge its employees in accordance with applicable law." The applicable law, in Brown's instance, was found at I.C. 20–6.1–4–14 (1976 ed.).[2] Under this section the school corporation was required to notify a non-permanent teacher in writing on or before May 1 that the teacher's contract would not be renewed. The teacher could request a written statement showing the reason for the dismissal. The record reveals that the School Board met these requirements.

Brown and Duff also argue that, because the Carroll Education Association requested discussion of Brown's dismissal on behalf of all members of the bargaining unit, the School Board must discuss her dismissal. *Delphi, supra,* does not hold that discussion of an individual teacher contract is required even if used as a vehicle to discuss general

---

1. As in *Delphi,* we find it unnecessary to decide whether these terms or the more general term "working conditions," *id.,* require the discussion of general guidelines governing the non-renewal of a teacher's contract.

2. This section was amended by Acts 1978, P.L. 110 § 6, effective July 1, 1978. The present

law requires a conference with the school's governing body upon the request of a teacher. The conference is to take place after the school corporation notifies the teacher that the contract will not be renewed. The teacher may appear with a representative and present evidence and argument.

conditions or grievances. The exclusive representative cannot by semantics bootstrap an essentially individual grievance into a discussable topic. Under such an interpretation, the exclusive representative could, by simply adding "on behalf of all members of the bargaining unit" demand not only discussion of an individual teacher's discharge, but also discussion of the discipline of a particular student or the assignment of a teacher to general math instead of algebra. We reiterate, these individual grievances should be dealt with in the setting of a grievance procedure.

The trial court correctly determined that the IEERB's decision was contrary to law. The trial court's decision is accordingly affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.